# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| FRANCIS T. FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 3066 |
| | ) | |
| JOSEPH COSTELLO, individually, | ) | Judge Rebecca R. Pallmeyer |
| and PRINCIPAL LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Until February 2011, Plaintiff Francis Foster worked as an attorney on issues concerning certain pension and 401(k) plans available to mass transit workers. Though Foster alleges that he "represented [certain] jointly administered plans," the court notes that a plan is not an entity subject to representation, and understands Foster to mean that he represented the committees who sponsored the plans, and was responsible to ensure that the plans met legal requirements. After he provided legal advice that was apparently unwelcome, Foster was removed from his position by officials of the Pace Suburban Bus Division ("Pace") of the Regional Transportation Authority ("RTA"). Plaintiff then sued Pace, ultimately settling his claims against Pace in October 2012. *See Foster v. Pace Suburban Bus Div. of the Reg'l Transp. Auth.*, No. 11-cv-9307 (N.D. Ill.) (dismissed Oct. 25, 2012) ("Pace Litigation").

Foster then filed this lawsuit against Defendants Joseph Costello, Executive Director of the Regional Transportation Authority ("RTA"), and Principal Life Insurance Company ("Principal"), the entity that paid Foster's salary. In his amended complaint, Foster asserts that Costello and Principal are also liable for his removal—Costello, under 42 U.S.C. § 1983 and the Illinois Whistleblower Act, for failing to reinstate Foster; and Principal, for refusing to continue paying Foster's salary. Costello and Principal both separately moved to dismiss the complaint.

Costello argues that Foster lacks standing, that his allegations are insufficient to state a claim, that the claims are untimely, and that Costello has qualified immunity from any personal liability. Principal also challenges Foster's standing to sue, and contends that Foster fails to state a claim for tortious interference with prospective business relationship. In addition to his motion to dismiss, Costello seeks Rule 11 sanctions against Foster and his attorney for filing a frivolous complaint. For the reasons discussed below, Costello and Principal's motions to dismiss [26, 29] are granted, and Costello's motion for Rule 11 sanctions [37] is entered and continued.

## BACKGROUND

The following facts are set forth in the Amended Complaint and attached exhibits, and are presented in a light most favorable to Plaintiff.

## I. Factual Background

According to his allegations, Plaintiff Foster has, since the 1980s, "represented seven jointly administered pension and 401(k) plans" ("the Plans") under collective bargaining agreements between the unions and RTA and/or Pace. (Am. Compl. [23] ¶ 1.) Pace is a municipal corporation and a division of RTA, another municipal corporation that manages the transit systems throughout Chicago and its surrounding areas. (*Id.* ¶ 15.) Six of the Plans provide benefits for Pace employees ("Pace Plans"), and the seventh is a 401(k) plan for RTA employees ("RTA Plan"). (*Id.* ¶ 1.) The Plans are considered "private trusts" for the benefit of Pace or RTA employees. (*Id.* ¶ 2.) Each plan is governed by a committee, composed of representatives from the union and from RTA or Pace management. (*Id.*) The Plan Committees were responsible for retaining an attorney (*id.*), and in 2003[1], adopted a resolution to retain

---

[1] Plaintiff dates his role as Plan attorney from the 1980s but his allegations and the attached exhibits refer to the relationship as beginning in 2003. (*See, e.g.*, Am. Compl. ¶ 18; Pace Sw. Div. Ret. Plan Minutes, Oct. 20, 2003, Ex. B to Am. Compl., hereinafter "10/20/03 Minutes"; Pace S. Div.-ATU Local 1028 401K Plan Trs. Meeting, June 9, 2003, Ex. B to Am. Compl., hereinafter "6/9/03 Minutes;" Pace Heritage Div.-ATU Local 241 401K Plan Meeting Minutes, Feb. 24, 2003, Ex. B to Am. Compl., hereinafter "2/24/03 Minutes"; Pace Nw. Thrift & Tax Deferred Sav. Plan Trs. Meeting, Feb. 20, 2003, Ex. B to Am. Compl., hereinafter "2/20/03

Foster on a contractual basis. (*Id.* ¶ 18.) The Pace Plan Committees instructed Principal, as acting trustee for the Pace plans,[2] to pay Foster a fixed monthly rate from the Pace Plans' jointly administered trust fund. (*Id.*)

On January 6, 2011, Plaintiff wrote a memorandum addressed to Pace and the Pace Board of Directors, warning the Board that Pace was in violation of the Illinois Pension Code, 40 ILCS 5/22-103(c), which requires the RTA and/or Pace to make a contribution to the Plans whenever the funding ratio to an "affected" plan, defined in Section 103(a), falls below ninety percent. Foster explained that, in order to comply with the Illinois Pension Code, Pace was required to make two payments into the Pace West Division Pension Plan for the years 2009 and 2010 of $181,360 and $235,190 plus interest, respectively. (Am. Compl. ¶¶ 3, 21; Letter from Foster to Pace Bd. of Dirs. & Pace of 1/6/11, Ex. C to Am. Compl., hereinafter "Jan. 6 Memo.")

Foster alleges that Pace resisted this advice. In a letter dated January 13, 2011, Pace General Counsel Thomas Ciecko questioned Foster's calculations, and challenged Foster's authority to send the January 6 Memo on behalf of the Plan Committees. (Letter from Ciecko to Foster of 1/13/11, Ex. B to Am. Compl.) Ciecko also asserted that Foster's demand interfered with the collective bargaining agreement between the union and Pace. (*Id.* at 1–2.) Ciecko suggested, further, that Foster's January 6 Memo constituted a violation of several Illinois Supreme Court Rules of Professional Conduct.[3] (*Id.* at 2.) Finally, Ciecko announced his belief

---

Minutes;" Pace W. Div. Pension Minutes, Jan. 21, 2003, Ex. B to Am. Compl., hereinafter "1/21/03 Minutes.")

[2]     It is not clear whether Principal also acted as trustee for the RTA Plan. Foster has alleged that Principal "acted as the trustee of the Plans" (Am. Compl. ¶ 12), but his allegations against Principal solely relate to Principal's implementation of Pace's instructions to stop making monthly payments to Foster for his work on behalf of the Pace Plans, not the RTA Plan. (*Id.* ¶ 69.)

[3]     Specifically, Ciecko asserted that Foster might be guilty of "making a statement of material fact to a person which statement a lawyer knows or reasonably knows is false" (ILL. R. PROF'L CONDUCT 4.1), "communicating on the subject of representation with a party a lawyer

that Foster's "ability to function as the attorney for the Plan has been irrevocably compromised." (*Id.*)  Ciecko sent another brief letter to Foster on January 28, 2011, requesting copies of "any Contracts, Letters of Engagement, or the like by which your [*sic*] represent Pace, or any pension plan on [*sic*] 401(k) plan for any of its divisions." (Letter from Ciecko to Foster of 1/28/11, Ex. B to Am. Compl.)

Plaintiff alleges that the Pace Board of Directors did eventually authorize the pension contribution he had advised, but nevertheless remained "very displeased" with him.  (Am. Compl. ¶ 22.)  In a letter dated February 24, 2011, Joseph Ellyin, a Pace employee, informed Foster that his representation of "any" Pace Plan was terminated effective February 28, 2011. (Letter from Ellyin to Foster of 2/24/11, Ex. D to Am. Compl.)  Ellyin echoed Ciecko's January 28 request for copies of "any Contract, Letters of Engagement on similar agreements by which you purport to represent those plans or committees." (*Id.*)  Though Ellyin's letter expressly terminated Foster's representation, Foster characterizes this letter as an "attempt" on the part of "Pace and a number of its employees . . . to terminate [his] representation on [*sic*] the Plans." (Am. Compl. ¶ 22).  Foster asserts that he could not be lawfully terminated "without the participation and support of the union member(s) of the Pace Plans."[4] (*Id.*)

In a letter to Ellyin, Plaintiff responded: "I intend to continue my representation as always unless and until I am relieved by proper authority." (Letter from Foster to Ellyin of 3/7/11, Ex. E to Am. Compl.)  Foster asserted that he could not be unilaterally terminated because such an action must come from a vote of each Plan's governing committee, including its union members.

knows to be represented . . . by contacting the [Pace] Board directly" in the January 6 Memo (ILL. R. PROF'L CONDUCT 4.2), and "using means that have no substantial purpose other than to burden a third person by threatening action" (ILL. R. PROF'L CONDUCT 4.4) (Ciecko does not identify the "third person"). (Letter from Ciecko to Foster of 1/13/11 at 2.)

[4]      Foster offers no direct legal support for this claim, but he reasons that because he was hired by the Plan Committees to ensure that the Plans satisfied various legal requirements, only "a vote of each of the governing committees of the Plans," comprised of representatives from both RTA/Pace and the union, could terminate his representation. (Am. Compl. ¶ 23; *see id.* ¶¶ 2, 18, 22, 37–38.)

(Am. Compl. ¶ 23; Letter from Foster to Ellyin of 3/7/11.)  He also asserted that the attempted termination was a retaliatory action prohibited under the "RTA Whistleblower Policy."[5] (*Id.*)  In response to the request for copies of his agreements with Pace and other pension plans, Foster directed Ellyin to his contract with the RTA Plan, and pointed out that the "Pace purchasing department" had a copy of it. (Letter from Foster to Ellyin of 3/7/11.)

Pace General Counsel Ciecko replied, stating that "notice is given" that "Mullen and Foster['s]"[6] contract to provide legal services for the RTA Plan "is terminated, effective upon [Plaintiff's] receipt of this notice," and that the only relevant contract that Pace appears to have had on record between Mullen & Foster and Pace, dated May 30, 2007, had expired on May 31,

---

[5]      Plaintiff has attached the Regional Transportation Authority Employee Protection Policy, which "is designed to be in compliance with the Illinois Whistleblower Reward and Protection Act (740 ILCS 174)," as Exhibit A to the amended complaint. (*See* Reg'l Transp. Auth. Emp. Prot. Policy, Ex. A to Am. Compl., hereinafter "RTA Whistleblower Policy," at 1.)

[6]      Plaintiff asserts that all of the contracts with the Plans were between the Plans and himself individually, while both Defendants Costello and Principal claim that the Plans contracted with Mullen & Foster, Plaintiff's law firm. (Pl.'s Mem. of Law in Opp. to Costello's Mot. to Dismiss [33], hereinafter "Pl.'s Opp. to Costello's Mot. to Dismiss," at 9; Pl.'s Mem. of Law in Opp. to Principal's Mot. [32], hereinafter "Pl.'s Opp. to Principal's Mot.," at 8–9; Mem. of Law in Supp. of Costello's Mot. to Dismiss Pursuant to R. 12(b)(6) [31], hereinafter "Costello's Mot. to Dismiss," at 9; Principal's Mem. in Supp. of its Mot. to Dismiss Am. Compl. [28], hereinafter "Principal's Mot.," at 12–13.)  The documentary record does not resolve this dispute.  Plaintiff provides no written contracts, but minutes from several Pace Plan meetings state that the Pace Plans retained Foster, and do not mention the firm. (*See* Am. Compl. ¶ 18; 10/20/03 Minutes; Meeting, 6/9/03 Minutes; 2/24/03 Minutes; 2/20/03 Minutes; 1/21/03 Minutes.)  On the other hand, at several Plan meetings, including two at which representatives approved annual contracts with Foster, the Plan Committees approved motions to pay the legal fees of Mullen & Foster.  (Pace ATU #1028 Thrift & Tax Deferred Sav. Plan Trs. Meeting, Feb. 23, 2005, Ex. B to Am. Compl., hereinafter "2/23/05 Minutes"; 6/9/03 Minutes; 2/20/03 Minutes.)  In his letters to Pace and the RTA, Foster himself used Mullen & Foster letterhead. (Letter from Foster to McHugh of 4/6/11 (Mullen & Foster); Letter from Foster to McHugh of 4/6/11, Ex. B to Am. Compl. (Mullen & Foster); Letter from Ciecko to Foster of 3/17/11 (identifying contract with Mullen & Foster); Letter from Foster to Ellyin of 3/7/11 (Mullen & Foster); Letter from Foster to Ciecko of 1/27/11, Ex. B to Am. Compl. (Mullen & Foster); Jan. 6 Memo (Mullen & Foster).)  It appears that Foster's law partner, Michael Patrick Mullen, died in September 2013. *See Michael Patrick Mullen Sr.*, Chi. Tribune, Sept. 19–20, 2013, http://www.legacy.com/obituaries /chicagotribune/obituary.aspx?n=michael-patrick-mullen&pid=167040438&fhid=16217; *Michael Patrick Mullen*, Avvo, http://www.avvo.com/attorneys/60601-il-michael-mullen-1118810.html (last visited May 5, 2014).

2010.[7] (Letter from Ciecko to Foster of 3/17/11, Ex. F to Am. Compl, at 1.) As Foster had failed to produce any documents evidencing his continued representation of the Pace Plans, Ciecko continued, Foster was "not employed by Pace or any plan." (*Id.*) Plaintiff responded on April 6, 2011, contesting Ciecko's (and presumably Pace's) ability to terminate Plaintiff's representation of the Pace Plans and the RTA Plan, and stating that Plaintiff would file a "formal complaint to report the above violations of the Whistleblower Act, Illinois Pension Code, Internal Revenue Code, and Regional Transportation Act." (Letter from Foster to Ciecko of 4/6/11, Ex. B to Am. Compl.) The letter also includes a "distribution list" of people to whom Plaintiff sent a copy of the letter, including Joseph Costello in his capacity as the RTA's representative on the RTA Plan Committee. (*Id.*)

Following this exchange, that same day, Plaintiff wrote to RTA's General Counsel Clinton McHugh to file a formal complaint under the RTA Whistleblower Policy. Plaintiff's letter asserted that Pace had retaliated against him by attempting to fire him for reporting that it was in violation of (1) the Illinois Pension Code, (2) the Illinois Whistleblower Act ("IWA"), (3) the Internal Revenue Code "governing qualified plans,"[8] and (4) Section 2.18 of the Regional Transportation Act, 70 ILCS 3615/2.18 (requiring the RTA to "deal with and enter into written contracts with [RTA] employees" through union representatives on matters including retirement benefits). (Am. Compl. ¶¶ 6, 26; Letter from Foster to McHugh of 4/6/11, Ex. B to Am. Compl.) Foster also repeated, this time to McHugh, that Pace was in violation of the Illinois Pension

---

[7]     Pace appears to have located the contract for the Pace Plans on its own; there is no indication that Plaintiff provided Pace with a copy of this contract after both Ciecko and Ellyin requested it. No copy of the contract appears in the record.

[8]     The letter does not identify the tax code provision at issue, but the complaint alleges that Plaintiff reported to Pace that it was in violation of § 401(a) of the Internal Revenue Code (defining a "qualified trust") and IRS Revenue Ruling 70-315 (discussing enforcement of employee's rights under qualified plans). *See* 26 U.S.C. § 401(a) (amended Apr. 7, 2014); Rev. Rul. 70-315, 1970-1 C.B. 91. The letter also does not say to whom (other than the Pace Board of Directors and Pace itself) Plaintiff claimed he had "reported" the violations. (*See* Letter from Foster to McHugh of 4/6/11.)

Code (Letter from Foster to McHugh of 4/6/11)—a statement that, according to Foster, should have put McHugh on notice that RTA was in violation of the RTA Act, 70 ILCS 3615/4.02b (requiring RTA to "continually review the payment" of employer contributions, and to make contributions on behalf of a division if it is more than one month overdue). (Am. Compl. ¶¶ 27–28.) In his amended complaint, Foster alleges that RTA Executive Director, Defendant Costello, "retaliated" against Foster for reporting these alleged violations by "refus[ing] to act in good faith on Foster's disclosures" and "by authorizing, abetting, assisting, ordering, directing, encouraging, suggesting or inducing the RTA 401(k) Plan Committee to terminate Foster's representation," and "cover[ing] up" the alleged violations. (*Id.* ¶¶ 8, 29–31.)

Pace also "unilaterally and wrongfully issued instructions to Principal" to stop making monthly fee payments to Foster for any work performed for the Pace Plans on or after March 1, 2011. (Am. Compl. ¶ 25.) Foster alleges that, as trustee for the Pace Plans, Principal has a fiduciary duty "to follow the plan documents" and "to follow the instructions of the plan committee." (*Id.* ¶¶ 32–33.) Darrell Washington, a Principal employee, stopped paying Foster his fees at the direction of individual(s) at Pace whom he refused to identify.[9] (*Id.* at ¶¶ 35–36.) On May 4, 2011, Foster warned Washington that Pace's actions were retaliatory, that only the Pace Plan Committees could stop payments to Foster, and therefore, that "Pace's instructions were unauthorized and null and void." (*Id.* at ¶¶ 36–37.) Washington responded that he would follow instructions from Pace alone, not from the Pace Plan Committees. (*Id.* at ¶ 37.) Principal maintained this decision even after June 23, 2011, when Foster produced signed statements from the union representatives on the Pace Plan committees confirming that they did not authorize the decision to stop payments to Foster. (*Id.* at ¶ 38.)

---

[9] Foster "advised Washington that Pace was taking retaliatory action" against him on May 4, 2011, and in response, Foster alleges, Washington told him that he had been told to stop paying Foster "but he refused to identify the individual or individuals from Pace who rendered such instruction." (Am. Compl. ¶ 36.)

## II.    Procedural Background

Plaintiff Foster sued Pace and various Pace employees on December 30, 2011 in the Northern District of Illinois.  In that case, assigned to Judge Aspen of this court, Foster alleged claims arising from facts similar to those presented here, including: a § 1983 claim for retaliation in violation of the First Amendment (Count I), a claim under the IWA (Count IV), and a claim for intentional interference with prospective economic advantage (Count V). (Compl. in *Foster v. Pace Suburban Bus Div. of the Reg'l Transp. Auth.*, No. 11-cv-9307 [1], hereinafter *"Foster v. Pace* Compl.")  The parties settled that case in a confidential agreement, and the court dismissed the case in October 2012. (Minute Entry of 10/25/2012 in *Foster v. Pace* [24].)

Six months later, in April 2013, Plaintiff filed this action against RTA Executive Director Costello and the Pace Plans' trustee, Principal. (Compl. [1].)  Plaintiff's amended complaint, filed in August 2013, alleges: (1) Defendant Costello violated Plaintiff's First Amendment rights in violation of 42 U.S.C. § 1983 when he "failed and refused to act" after Foster notified the RTA that Pace had terminated him in retaliation for reporting that Pace was in violation of state law (Am. Compl. ¶¶ 40–44) (Count I); (2) Defendant Costello is liable, because of his "supervisory authority over Pace and its employees," for Pace's retaliatory termination, and for failing to correct it in violation of § 1983 (*id.* ¶¶ 49–53) (Count II); (3) Defendant Costello violated sections 15 and 20.1 of the IWA, 740 ILCS 174/1 *et al.*, when he failed to reinstate Plaintiff (*id.* ¶¶ 59–63) (Count III); and (4) Defendant Principal tortiously interfered with Plaintiff's business relationship with the Pace Plans when, at Pace's direction, Principal stopped making monthly payments to Plaintiff on behalf of the Pace Plans. (*Id.* ¶¶ 67–74) (Count IV.)

Jurisdiction is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  The court has original, federal question jurisdiction over Counts I and II, as Plaintiff alleges that Costello violated his federal constitutional rights under 42 U.S.C. § 1983 by retaliating against him. Counts III and IV, state law claims under the IWA and the common law tort of intentional interference with economic advantage, arise from the same set of facts as Counts I and II:

Plaintiff alleges that Costello retaliated against him, and that Principal, in essence, participated in this wrongful act by following orders to stop paying Plaintiff. Because these claims are "so related" to counts one and two, they "form part of the same case or controversy," and the court may exercise its supplemental jurisdiction. Though Plaintiff asserts the court has diversity jurisdiction over Count IV, as well, the court notes that diversity jurisdiction requires that all Plaintiffs be diverse in citizenship from all Defendants, and that Plaintiff, Costello, and Principal are all citizens of Illinois. (Am. Compl. ¶¶ 10-12.) Both Defendants move to dismiss.

## DISCUSSION

### I.  Standard of Review

When considering a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A complaint will survive a motion to dismiss even without "detailed factual allegations" as long as it provides allegations that "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate when the complaint fails to plead "sufficient factual allegations to permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (discussing *Twombly* and *Iqbal*).

When filing any pleading with the court, under Rule 11, a party certifies both that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument," and that "the factual contentions have" or "will likely have evidentiary support." FED. R. CIV. P. 11(b)(2), (3). "[A] frivolous argument is simply one that is baseless or made without a reasonable and competent inquiry." *Berwick Grain Co., Inc. v. Ill. Dep't of Agric.*, 217 F.3d 502, 504 (7th Cir. 2000) (internal quotations and citation omitted). A court may sanction a party for failing to comply with Rule 11.

## II.    Standing

Defendants contend, first, that Plaintiff lacks standing to proceed here because any agreement between the Plans and counsel was with the law firm of Mullen & Foster, not with Foster individually. (Costello's Mot. to Dismiss at 9; Principal's Mot. at 12–13 (citing various exhibits attached to the Amended Complaint including letters written by Foster on Mullen & Foster letterhead and bills paid by the Plans to Mullen & Foster).)  Whatever the merits of that dispute,[10] the court is not inclined to rely on it as a basis for dismissal of this complaint.  The court takes judicial notice that Mullen & Foster has dissolved, perhaps in the wake of the death last year of Foster's law partner.[11]  If the proper named plaintiff is Mullen & Foster, rather than Foster individually, Foster may well be entitled to sue on the dissolved firm's behalf. *See Howe v. Horton, Davis & McCaleb*, 85 Ill. App. 3d 970, 972, 407 N.E.2d 766, 767–68 (1st Dist. 1980) (holding that a claim may be brought on behalf of a dissolved law partnership even though "the partnership did not sue in the name of each individual partner").

## III.    Counts I, II, and III against Joseph Costello

### A.    Plaintiff fails to state a claim under § 1983

Defendant Costello argues that Plaintiff fails to allege that Costello participated in any wrongdoing, specifically RTA's failure to reinstate Plaintiff after he was terminated, by Pace, as attorney for the Plans. (Costello's Mot. to Dismiss at 7–8.)  Plaintiff's theory is that Costello committed wrongdoing "by his authorization and approval of Foster's termination from the RTA 401(k) Plan Committee," by participating in a "cover up" of RTA's various alleged statutory violations, and "by refusing to act on Foster's Whistleblower complaint." (Pl.'s Opp. to Costello's

---

[10]    As described in footnote 6, *supra*, the record is equivocal.

[11]    Mullen & Foster does not appear to be currently registered as any type of business entity in Illinois.  A search of the Illinois Secretary of State's databases of corporations/LLCs and partnerships (LP/LLP/LLLP) produced no record of Mullen & Foster.  Nor is the firm's assumed name, Mullen & Foster, registered in Cook County. *See* 805 ILCS 405/1. As noted above, Foster's law partner, Michael Patrick Mullen, died in September 2013.

Mot. to Dismiss at 8–9.) In essence, Foster urges that because Costello, as Executive Director of the RTA, had broad authority over the RTA, and, in turn, over Pace, Costello had an obligation to remedy Pace's wrongdoing, and specifically to reverse the termination of Foster's fee agreement with the Pace Plans and/or the RTA Plan, and "attempted termination" of his representation of the Plans. The court agrees with Costello that these allegations are insufficient to state a claim under § 1983.[12]

Plaintiff has not alleged that Costello directly participated in any RTA "decision" (or inaction) to not reinstate Foster. To state a claim for liability under § 1983, a plaintiff must allege that the defendant is "*personally responsible* for the deprivation of a constitutional right" because "he directed the conduct causing the constitutional violation," or "it occurred with his knowledge or consent." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (emphasis added) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651, 652 (7th Cir. 2001)). While the plaintiff need not allege the defendant's "direct participation," he must demonstrate that the defendant "acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). "The doctrine of *respondeat superior* does not apply to § 1983 actions," *Sanville*, 266 F.3d at 740, and "§ 1983 does not allow actions against individuals merely for their supervisory role of others." *Palmer*, 327 F.3d at 594 (7th Cir. 2003).

Plaintiff here has not alleged any facts that show that Costello participated, acquiesced, or otherwise caused his termination from the Pace Plans or RTA Plan. Plaintiff complains that

---

[12] The court notes that Defendant Costello also argues that Plaintiff's § 1983 claims are barred by the statute of limitations. (Costello's Mot. to Dismiss at 5.) Plaintiff effectively concedes as much, but urges that because Costello has still not reinstated him, Plaintiff's injury, retaliatory termination, "continues to the present day," and therefore, the statute of limitations has not started to run. (Pl.'s Opp. to Costello's Mot. to Dismiss.) In the alternative, Plaintiff also appears to assert, presenting additional facts in his opposition to Costello's motion to dismiss, that he was not terminated until June 23, 2011, and therefore, the case was filed within the limitations period. (*Id.* at 4.) As the court finds dismissal appropriate on other grounds, it need not resolve this issue.

Costello "failed and refused to act on Foster's April 6, 2011 letter in violation of RTA's own Whistleblower Policy." (Am. Compl. ¶ 7.) Presumably by taking no action in response to Plaintiff's letter, Costello allegedly "retaliated against Foster for reporting . . . violations of State and federal law to the RTA."[13] (*Id.* ¶ 29.) But these allegations do not support the conclusion that Costello himself was involved in decisions regarding Foster's role with respect to the Plans. In his April 6, 2011 letter, Plaintiff allegedly reported to the RTA that Pace was in violation of several laws and had retaliated against him, but that letter was addressed only to RTA's General Counsel, Clint McHugh. (*See* Letter from Foster to McHugh of 4/6/11.) Nowhere in the amended complaint does Plaintiff allege that Costello himself received the letter or was otherwise put on notice of Plaintiff's concerns. In his response opposing Costello's motion to dismiss, Plaintiff refers to another letter, also dated April 6, 2011, and addressed to Pace's General Counsel Thomas Ciecko. In that second letter, Foster asserted that Ciecko did not have the legal authority to terminate Foster's representation of the Plans, and therefore, that Foster would continue to represent, at least, the RTA Plan. (Letter from Foster to Ciecko of 4/6/11 at 1–2.) Foster also claimed that Ciecko's "[a]ttempted termination" violated the RTA Whistleblower Policy. (*Id.* at 2.) Foster then included a lengthy discussion of the "Plan Documents," his "contracts" to represent the Plans (citing the Plans' meeting minutes), why attempted termination violated "Plan Documents," and various implicated "State and Federal Laws." (*Id.* at 2–8.) He concluded the letter by stating that he was "filing a formal complaint to report the above violations of the Whistleblower Act, Illinois Pension Code, Internal Revenue Code, and Regional Transportation Act (*Id.* at 9.) The "formal complaint" attached to the letter to Ciecko was the April 6, 2011 letter that Foster had sent to RTA General Counsel McHugh. (*See* Letter from Foster to McHugh of 4/6/11.) Plaintiff urges that Costello's name in a list of

---

[13]     While this allegation refers specifically to the RTA Plan alone, Plaintiff also appears to allege that Costello is liable for Plaintiff's termination as counsel for all of the Plans, not just the RTA Plan. (*See* Am. Compl. ¶¶ 26, 29, 51–53.)

persons who received a copy of this second letter is sufficient to support an inference that Costello engaged in wrongdoing. (Pl.'s Opp. to Costello's Mot. to Dismiss at 8 n.3; *see* Letter from Foster to Ciecko of 4/6/11.)  Costello received the copy only in his capacity as RTA Plan Committee representative, however.  Plaintiff offers no basis for the conclusion that Costello's receipt of a copy of the letter addressed to RTA's General Counsel establishes that Costello participated in the alleged retaliation against Plaintiff.

Plaintiff relies on one additional document, as well.  Specifically, he notes that in a letter dated June 23, 2011, Dominick Cuomo, the chairman of the RTA Plan Committee, wrote to Foster stating: "I understand that you were notified on *March 17, 2011* by Thomas L. Ciecko, General Counsel of Pace, that your professional services to the [RTA] Plan were terminated." (Letter from Cuomo to Foster of 6/23/11, Ex. A to Pl.'s Opp. to Costello's Mot. to Dismiss) (emphasis added.)  Cuomo then wrote that, though Foster had continued to work, after March 17, 2011, for the RTA Plan "as authorized by METRA," the Plan Committee had decided to terminate Foster's representation entirely "effective June 30, 2011." (*Id.*)  Foster appears to believe this June 23, 2011 letter bolsters his allegations against Costello, but the court is not persuaded.  First, the Cuomo letter reiterated that it was Pace General Counsel (not RTA Executive Director Costello), who terminated Foster's representation of the RTA Plan in a letter addressed to Foster and dated March 17, 2011—well before Plaintiff even complained to RTA. The Cuomo letter suggests that to the extent that Foster continued to work for the RTA Plan until June, he did so only on behalf of METRA (and not RTA or Pace).  Second, Costello himself is noticeably absent from this communication, which appears to relay the RTA Plan Committee's decision to terminate Plaintiff's representation.  Costello did not write the letter, nor is he mentioned or even copied on the letter.  Not only is the complaint devoid of any claims that Plaintiff communicated directly with Costello, but Plaintiff also fails to allege that Costello ever communicated with him or took any action regarding Plaintiff's whistleblower complaint or claim of retaliatory termination.

Plaintiff claims that Costello caused the RTA to violate 70 ILCS 3615/4.02b (requiring the RTA to review Pace's contributions to the Plans, and to make any overdue payments on Pace's behalf), and that Costello "covered up" Pace's violation of the Illinois Pension Code. (*See* Am. Compl. ¶¶ 30–31, 52.) Costello's alleged participation in violations of Illinois state law, however, do not establish that Costello also participated in violating Plaintiff's First Amendment rights, or caused his retaliatory termination.

Foster provides no additional information concerning what Costello actually did to "authoriz[e], aid[], abet[], assist[], order[], direct[], encourag[e], suggest[] or induc[e]" the RTA Plan Committee to terminate Foster. (*See* Am. Compl. ¶ 29.) And, while Plaintiff also alleges generally that Costello engaged in "unlawful actions [that] supported, adopted and failed to repudiate false and defamatory statements made against Foster," he does not specify what "unlawful actions" Costello took against him. (*See id.* ¶ 46.) Plaintiff's attempts to allege wrongdoing, by providing a laundry list of potentially inculpatory conduct without alleging any supporting facts, are insufficient under the plausibility pleading standards announced in *Twombly* and *Iqbal.*

In Count II, Plaintiff alleges that Costello is liable for Pace's alleged retaliatory termination because he has "supervisory authority" over Pace and its employees. The focus of this count is on Plaintiff's wrongful termination *by Pace* for reporting that Pace was in violation of Illinois law. Count II alleges that Costello is liable for retaliation because he "authoriz[ed], approv[ed], facilitat[ed], condon[ed], ratif[ied], turn[ed] a blind eye or permit[ted] the retaliation *by Pace and its employees*" resulting in Plaintiff's termination as counsel for the RTA Plan. (Am. Compl. ¶ 53) (emphasis added.) Again, the amended complaint is silent on any actions Costello actually took to authorize, approve, or permit retaliation. Plaintiff's suggestion that Costello is liable for Pace's wrongdoing because of his "supervisory authority" fails because there is no *respondeat superior* liability under § 1983. Assuming that Pace retaliated against Plaintiff, Costello cannot be held liable merely because he is the Executive Director of the RTA.

Finally, the Court notes that the claims alleged against Costello, in fact, appear to be a complaint against the RTA itself for failing to take action in response to Plaintiff's whistleblower complaint. Presumably the confidential settlement agreement Foster signed in settling the litigation against Pace bars him from pursuing an action directly against the RTA or against Costello in his official capacity as RTA director. (*See* Costello's Mot. to Dismiss at 9 n.3 ("Costello suspects that Foster is attempting to assert individual capacity claims against Costello because . . . after the Pace Litigation, Foster can no longer maintain official capacity claims against Costello or direct claims against the RTA.").) Even if not barred by the settlement agreement, the court logically would conclude that the earlier litigation against Pace would bar direct claims for the same facts against its oversight body, the RTA, and RTA employees acting in their official capacity.

Plaintiff has failed to allege that Costello was personally responsible for the alleged deprivation of Plaintiff's First Amendment rights. Counts I and II are dismissed.

**B.    Plaintiff's claim under the Illinois Whistleblower Act is barred by the statute of limitations, and otherwise fails to state a claim**

Having dismissed the only federal claims, the court will ordinarily relinquish jurisdiction over the related state law claims. Because the parties have addressed those claims extensively, however, the court offers brief observations. First, Costello argues that Plaintiff's claim under the IWA, 740 ILCS 174/1 *et al.*, is barred by the one-year statute of limitations in the Tort Immunity Act, 745 ILCS 10/8-101, which creates protections against civil actions brought against local government entities and their employees. (Costello's Mot. to Dismiss at 10–11.) The IWA does not contain a statute of limitations, but Plaintiff responds that the relevant statute of limitations is five years because the Tort Immunity Act does not apply to retaliatory discharge claims, or, by analogy, to IWA claims.[14] (Pl.'s Opp. to Costello's Mot. to Dismiss at 12–13)

---

[14]    Plaintiff explains that he did not bring a retaliatory discharge claim because the tort "is not applicable to independent contractors." (Pl.'s Opp. to Costello's Mot. to Dismiss at 13) (citing *New Horizons v. Clarion*, 203 Ill. App. 3d 332, 337, 561 N.E.2d 283, 285 (1990),

(discussing *Zelman v. Hinsdale Twp. High Sch. Dist.*, 2010 WL 4684039 at *2 (N.D. Ill. Nov. 12, 2010), and *Smith v. Waukegan Park Dist.*, 231 Ill. 2d 111, 896 N.E.2d 232 (2008).) In the alternative, Plaintiff asserts, the limitations period has not started running because Costello still has not acted in response to his complaint, filed on April 6, 2011, and therefore, his claim is a continuing violation. (*Id.* at 14.)

Section 15 of the IWA prohibits an employer from retaliating against an employee for disclosing information in a government proceeding or to law enforcement "where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15 (effective Jan. 1, 2004). Though the parties have devoted considerable attention to the question of whether Plaintiff's IWA claim is barred by the statute of limitations, this court notes a more fundamental concern: It is not clear that Plaintiff has alleged the elements of an IWA claim as defined by this statute at all. First, it is not clear that Foster was "an employee" protected by the IWA.[15] Nor is there any allegation in the complaint that Plaintiff disclosed his concerns about pension plan funding "in a government proceeding or to law enforcement." Instead, as this court understands his allegations, Plaintiff instead disclosed *to Plan administrators* (arguably his own clients) that the Plans were underfunded. (*See* Am. Compl. ¶ 62) ("Foster reported *to the RTA* . . . .") That disclosure allegedly made responsible Pace managers angry and led them to terminate his services.

which observed that the Illinois Supreme Court "has not expanded the tort [of retaliatory discharge] outside of the *employment* setting" and concluding that because independent contractors are not employees, they cannot assert a claim for retaliatory discharge) (emphasis in original.)

[15] An "employee" under the IWA is "any individual who is employed on a full-time, part-time, or contractual basis by an employer." 740 ILCS 174/5. Plaintiff claims that he is an "employee" under the IWA because he is a "contractor of Pace," (Am. Compl. ¶ 61), but he also has alleged that he "was never an employee of the RTA or Pace, nor was he ever retained to represent or provide legal services to the RTA or Pace." (*Id.* ¶ 18.) And he asserts that neither Pace nor the RTA had the authority to terminate his representation of the Plan Committees because he was retained solely by the Plan Committees, and "no action can be taken" without the participation of the union members of those committees. (Am. Compl. ¶¶ 2, 4, 18.)

There is no allegation that any governmental proceeding or law enforcement investigation was involved.

Assuming, nevertheless, that Foster's allegations state a claim under the IWA, the court shares Defendant's concerns about the timeliness of such a claim. The Tort Immunity Act grants complete immunity to local public entities and their employees for certain identified claims, and limits other types of civil actions, not by complete immunity, but by a limitations period. Section 2-101 identifies certain types of actions that are excluded from the Act entirely—most notably, actions for relief other than damages. 745 ILCS 10/2-101.[16] If the local public entity or employee is not completely immune from suit under the Act, a plaintiff must bring her civil action within one year "from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a). "The purpose of the one-year limitation period contained in section 8–101(a) is to encourage early investigation into a claim against a local governmental entity . . . . Such an investigation permits prompt settlement of meritorious claims and allows governmental entities to plan their budgets in light of potential liabilities." *Hubble v. Bi-State Dev. Agency of Ill.-Mo. Metro. Dist.*, 238 Ill. 2d 262, 279, 938 N.E.2d 483, 495 (2010) (citations omitted).

Citing *Padilla v. County of Cook*, 100 F. Supp. 2d 1145, 1147 (N.D. Ill. 2000) (Levin, M.J.) and *Crumpley v. Rich Township High School District No. 227*, No. 08 C 3467, 2009 WL 2986374 at *6 (N.D. Ill. Sept. 15, 2009) (Holderman, J.), Costello argues that the Tort Immunity

---

[16] The full scope of the exclusion is as follows: "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee. Nothing in this Act affects the liability, if any, of a local public entity or public employee, based on: a). Contract; b). Operation as a common carrier; and this Act does not apply to any entity organized under or subject to the "Metropolitan Transit Authority Act", approved April 12, 1945, as amended; c). The "Workers' Compensation Act", approved July 9, 1951, as heretofore or hereafter amended; d). The "Workers' Occupational Diseases Act", approved July 9, 1951, as heretofore or hereafter amended; e). Section 1-4-7 of the "Illinois Municipal Code", approved May 29, 1961, as heretofore or hereafter amended. f). The "Illinois Uniform Conviction Information Act", enacted by the 85th General Assembly, as heretofore or hereafter amended." 745 ILCS 10/2-101 (footnotes omitted).

Act's one-year statute of limitations applies to claims brought under the IWA. (Costello's Mot. to Dismiss at 11.) The district court in *Padilla* reasoned that the plaintiff's claim alleging retaliation under the Whistleblower Protection Act, 5 ILCS 395/1[17], was "analogous to" the common law tort of retaliatory discharge. 100 F. Supp. 2d at 1146–47. Because the one-year statute of limitations under the Tort Immunity Act applied to retaliatory discharge claims, the court concluded that "an analogous Illinois Whistleblower Act retaliation claim . . . is also governed by the same one-year statutory time bar." *Id.* at 1147. The district court in *Crumpley* came to the same conclusion, applying the Tort Immunity Act's statute of limitations to the IWA. No. 08 C 3467, 2009 WL 2986374 at *6.

Plaintiff does not address the district court's holding in *Crumpley* at all, but urges that the court's holding in *Padilla* is inapplicable because there the court "addressed a different Whistleblower Statute," not the IWA. (Pl.'s Opp. to Costello's Mot. to Dismiss at 12–13.) Plaintiff also cites *Zelman v. Hinsdale Township High School District 86*, No. 10 C 00154, 2010 WL 4684039 (N.D. Ill. Nov. 12, 2010), where Judge Coleman of this court, relying on two Illinois Supreme Court decisions, concluded that the Tort Immunity Act's one-year statute of limitations does not apply to claims of retaliatory discharge under the IWA. (Pl.'s Resp. to Costello's Mot. to Dismiss at 12–13.) This court reads the Illinois Supreme Court cases on which Judge Coleman relied less broadly, however. In *Boyles v. Greater Peoria Mass Transit Dist.*, 113 Ill. 2d 545, 556, 499 N.E.2d 435 (1986), the Illinois Supreme Court held that section 2-201 of the Tort Immunity Act barred recovery of punitive damages in a retaliatory discharge action against a local public entity. 113 Ill. 2d at 554–56, 499 N.E.2d at 438–39. *Boyle* makes no mention of the statute of limitations. And in *Smith v. Waukegan Park Dist.*, 231 Ill. 2d 111, 117, 896 N.E.2d

---

[17] Section 1(b) of the Whistleblower Protection Act provided: "No disciplinary action shall be taken against any employee for the disclosure of any alleged prohibited activity under investigation or for any related activity. For the purposes of this Act, disciplinary action means any retaliatory action taken against an employee, including but not limited to reprimand, suspension, discharge, demotion or denial of promotion or transfer." 5 ILCS 395/1. The Act was repealed on December 9, 2003, and is distinct from the IWA.

232 (2008), the Illinois Supreme Court noted that "the tort of retaliatory discharge may be committed only by the employer," and therefore, held that "section 2–109 *immunity* does not apply in cases of retaliatory discharge because the employer, not the employee, ultimately causes the injury." 231 Ill.2d at 117, 896 N.E.2d at 236 (emphasis added). As explained earlier, in section 2-109[18], the Tort Immunity Act provides complete immunity to local public entities against certain claims, but for other suits against public entities and their employees, the Act establishes a one-year statute of limitations. *See* 745 ILCS 10/8-101(a).  *Smith* held that "section 2-109 immunity does not apply" to the tort of retaliatory discharge, not that the cause of action for retaliatory discharge was excluded entirely from the Tort Immunity Act and its limitations provision.

In *Kirley v. Board of Education of Maine Township High School District 207*, Judge Holderman rejected the *Zelman* reasoning and concluded that a claim against a local public entity under the IWA, like a retaliatory discharge claim, is subject to the one-year statute of limitations in section 8-101 of the Tort Immunity Act. No. 13 C 1706, 2013 WL 6730885 at *11 (N.D. Ill. Dec. 20, 2013) (Holderman, J.)  He noted that "[t]he *Smith* court did not . . . hold that the Tort Immunity Act *as a whole* was inapplicable." *Id.* at 11 n.6 (emphasis added).  Judge Holderman concluded that plaintiff's claim for damages for violation of the IWA claim was time-barred; but because the Tort Immunity Act carves out actions non-monetary relief, plaintiff's claim for reinstatement could proceed.  *Id.*

The Tort Immunity Act's exclusion of actions for non-monetary relief similarly explains the result in *Raintree Homes, Inc. v. Village of Long Grove*, a case Foster emphasizes.  209 Ill. 2d 248, 252, 807 N.E.2d 439, 442 (2004). (*See* Pl.'s Opp. to Costello's Mot. to Dismiss at 13–14.)  In that case, property developers challenged the validity of a village ordinance that imposed certain fees for the issuance of building permits. Affirming the conclusion that the Tort

---

[18]      "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109.

Immunity Act did not govern plaintiff's case at all, the Illinois Supreme Court noted that plaintiffs had

> no substantive claim grounded in tort, contract, or statute; therefore, the only substantive basis for the claim is restitution to prevent unjust enrichment. Hence, plaintiffs' requested relief is more properly characterized as restitution rather than damages. Plaintiffs' cause of action, therefore, is excluded from the Tort Immunity Act by the first sentence of section 2–101 (745 ILCS 10/2–101 (West 2002)).

209 Ill. 2d at 258, 807 N.E.2d at 445. Because the claim for equitable relief being pursued in *Raintree Homes* was carved out of the Tort Immunity Act altogether, the property developers claims were spared the timeliness bar.[19]  In this case, in contrast, Plaintiff seeks both reinstatement and "an award of *actual damages* sustained as a result of the violation, including, but not limited to, the lost income and lost professional opportunities and relationships . . . " and "an award of Plaintiff's litigation costs, expert witness fees, and reasonable attorney's fees." (Am. Compl. ¶ 65) (emphasis added.)

Like the common law tort of retaliatory discharge, a claim of retaliation resulting in termination under the IWA is a tort, subject to the Tort Immunity Act's one-year statute of limitations to the extent that Plaintiff seeks damages. Significantly, as Plaintiff sees things, only the Plan Committees have the power to appoint or remove the Plan's attorney; he thus effectively concedes that Defendant Costello has no unilateral legal power to order reinstatement and that the only available relief is a damages award. In this case, all of

---

[19]    In more recent cases, the Illinois Supreme Court has routinely enforced the Tort Immunity Act protections against untimely claims. *See, e.g., Hubble*, 238 Ill. 2d at 268, 270 n.4, 938 N.E.2d at 488, 490 n.4 (one-year statute of limitations in Tort Immunity Act barred personal injury action arising from collision with bus operated by local public entity); *Paszkowski v. Metro. Water Reclamation Dist. of Greater Chi.*, 213 Ill. 2d 1, 12–13, 820 N.E.2d 401, 408 (2004) (same result in case brought by worker injured in deep tunnel construction project; "the legislature intended that section 8-101 of the [Tort Immunity] Act apply 'broadly to any possible claim against a local government entity and its employees.") (quoting *Ferguson v. McKenzie*, 202 Ill. 2d 304, 309–10, 780 N.E.2d 660, 663 (2001)) (emphasis *in Paszkowski); cf. Collins v. Town of Normal*, 351 Ill. Dec. 621, 626, 951 N.E.2d 1285, 1290 (Ill. App. Ct.–4th Dist. 2011) (plaintiff's retaliatory discharge claim under the Workers' Compensation Act is not barred by a one-year statute of limitations because a Worker's Compensation Act claim falls within an "enumerated exception" as it is listed in section 2-101).

Costello's allegedly wrongful conduct took place in 2011. Plaintiff asserts that Costello retaliated against him by failing to act in response to Plaintiff's whistleblower complaint. Even if Costello had the power to reinstate Foster as attorney for the Plans, and his failure to do so was retaliatory, a reasonable person would have known of the wrong well more than a year before Foster filed this action on April 23, 2013. Indeed, Plaintiff certainly understood he had been wronged in his termination from the Pace Plans (and that RTA would not correct it) by December 2011, when he sued Pace and several Pace employees under § 1983 and the IWA for retaliatory termination.

Plaintiff attempts to avoid this result by arguing that the limitations period has not begun to run because Costello still has not responded to Plaintiff's whistleblower complaint, filed with the RTA on April 6, 2011, by reinstating him. (Pl.'s Opp. to Costello's Mot. to Dismiss at 14.) Under this theory, presumably, Foster would be free to file his claim indefinitely. Foster's contention that Costello's failure to reinstate him constitutes a "continuing violation" is unpersuasive. A continuing violation is "a continuing or repeated injury" that is "occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278, 798 N.E.2d 75, 85 (2003). Where the plaintiff's injuries flow from a "single overt act . . . the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Feltmeier*, 207 Ill. 2d at 278–79, 798 N.E.2d at 85 (emphasis added) (citations omitted). In the context of Title VII, similarly, "a discrete retaliatory or discriminatory act," such as "termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" may be said to have "'occurred' on the day that it 'happened'." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 114 (2002). Foster's alleged injuries flow from his removal from his role in March or April 2011.

Plaintiff's reference to *Heard v. Sheahan*, 253 F.3d 316, 318–19 (7th Cir. 2001) (Pl.'s Opp. to Costello's Mot. to Dismiss at 3) is unhelpful. In *Heard*, the defendants, jail officials,

refused to give the plaintiff medical treatment at any point after becoming aware that he needed it. Unlike the plaintiff's Eighth Amendment claim of deliberate indifference in *Heard*, Plaintiff here alleges a single, discrete act of retaliation, not a "series of wrongful acts." *Cf. Heard*, 253 F.3d at 318.   Nor does Plaintiff's claim that Costello retaliated against him by ignoring his whistleblower claim and failing to reinstate him fit the definition of a "continuing violation" offered by the Seventh Circuit in *Heard*, where the court stated: "A violation is called 'continuing[]' . . . when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Id.* at 319.   Plaintiff has alleged just one "incident": Costello's failure to respond to Plaintiff's whistleblower complaint and to reinstate Plaintiff.

Foster's IWA damages claim is untimely.

## IV.   Plaintiff's tortious interference claim against Principal is barred by the Pace litigation

Finally, the court concludes that Plaintiff's claim that Principal tortiously interfered with its prospective economic advantage and attorney-client relationship with the Plans is barred by resolution of the Pace Litigation.   The only wrongdoing that Plaintiff alleges Principal committed was "intentionally and improperly interfer[ing] with Foster's representation of the Pace Plans by implementing the unauthorized instructions of an unidentified Pace employee to stop paying Foster's monthly fees . . . ."   (Am. Compl. ¶ 69) (emphasis added.)   Pace's instruction to Principal to stop making monthly payments to Foster for his representation of the Pace Plans is a function of *Pace's* decision to terminate Foster's appointment as attorney for the Pace Plans. Thus, whether Principal's "implementat[ion]" of Pace's instructions was tortious depends on whether Pace's decision to terminate Foster amounted to retaliation.   That issue was resolved in the Pace litigation, where Plaintiff alleged, among other claims, that Pace and its employees wrongfully terminated his representation of the Plans in retaliation for his report that Pace was in violation of Illinois law.   Indeed, Foster alleged specifically in that earlier complaint that "Principal received instructions from Pace to stop paying Plaintiff's monthly fees." *See Foster v. Pace*

Compl. ¶¶ 69–78, 96 (emphasis added). The Pace litigation was resolved by a confidential settlement agreement. Whatever the terms of that settlement may be, it put to rest claims against Pace, its employees, and the RTA. As Plaintiff's claim against Principal is derivative of its already litigated claims against Pace, Plaintiff cannot re-litigate Pace's liability here by suing Principal.

## V.     Rule 11 Motion

Finally, in addition to his motion to dismiss, Costello has moved to impose sanctions against Plaintiff for filing a frivolous complaint under Rule 11. (Mem. of Law in Supp. of Costello's Mot. for Sanctions Pursuant to R. 11 [38], hereinafter "Costello's R. 11 Mot.," at 1.) Costello argues that the claims alleged against Costello are based on the same facts and violations alleged in the Pace litigation. (*Id.*) After Defendant Costello notified Plaintiff of his belief that the suit was frivolous under Rule 11, Plaintiff neither withdrew his complaint nor responded to Costello's motion. (Costello's R. 11 Mot. at 5–6); *see* FED. R. CIV. P. 11(c)(2).

As explained in detail above, Foster's claims in this complaint against Costello and Principal do appear to overlap with the claims he asserted in the earlier litigation. The court has dismissed Foster's claim against Principal for this very reason. Allegations against Costello fail to state a claim or are time-barred, but they, too, appear to be derivative of the claims alleged against Pace. Plaintiff has made no response to Costello's motion for sanctions pursuant to Rule 11. The court directs him to do so within 14 days.

## <u>CONCLUSION</u>

Plaintiff's § 1983 claims against Costello (Counts I and II) are insufficiently pleaded. His IWA claim (Count III) appears to be time-barred. His claim for tortious interference against Principal (Count IV) is derivative of earlier, dismissed litigation. Defendants' motions to dismiss [29, 26] are granted. Costello's motion for Rule 11 sanctions [37] is entered and continued pending a response from Plaintiff, to be submitted within 14 days.

ENTER:

Dated:  May 9, 2014

REBECCA R. PALLMEYER
United States District Judge