UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| FRANCIS T. FOSTER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 13 C 3066 |
| PRINCIPAL LIFE INSURANCE COMPANY, | ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Francis Foster's claims against Principal Life Insurance Company are before the court for a second time. The court initially dismissed those claims, but the Court of Appeals reversed. Principal contends on remand that Foster effectively released his claims against Principal when he settled an earlier lawsuit against another party. Principal moves the court for dismissal for failure to state a claim on this basis, or for dismissal of the case for lack of jurisdiction. For the reasons explained here, the motion is denied.

## BACKGROUND

The facts in this case were explained in some detail in this court's previous opinion and that of the Seventh Circuit. *See Foster v. Costello*, No. 13 C 3066, 2014 WL 1876247 (N.D. Ill. May 9, 2014), *rev'd sub nom., Foster v. Principal Life Ins. Co.*, 806 F.3d 967 (7th Cir. 2015). This opinion presumes familiarity with those earlier opinions but will present relevant facts and the procedural history briefly here.

For several years, Plaintiff Francis Foster, an attorney, represented committees that supervised pension and retirement plans for employees of six bus lines in northern Illinois. The committees were composed of an equal number of union and management representatives. The plans—referred to as the "Pace" plans, because the six bus lines were part of the Pace Suburban Bus Division of the Regional Transportation Authority ("RTA")—appointed Defendant

Principal Life Insurance Company as the plan trustee for five of these plans. As trustee, Principal held title to the assets of the plans and had the fiduciary duty to adhere to the Pace plan documents. In 2011, Foster alleges, Defendant Principal breached that duty when it stopped paying Foster for his services as an attorney. Foster claims Principal was following instructions from managers at Pace rather than from the plan committees. He alleges, further, that Pace gave those instructions to retaliate against Foster for having notified Pace management that one of the Pace plans (the one for which Principal was not acting as trustee) was underfunded and in violation of the Illinois Pension Code. Even after union committee members signed statements confirming that they had not authorized Principal to stop paying Foster, Principal refused to reverse course, instead adhering to directions from management. Foster nevertheless continued representing the plans for several months without compensation.

Pace management thus effectively ousted Foster from his position as attorney for the plans. In response, on December 30, 2011, Foster sued the Pace Suburban Bus Division of the RTA and various Pace employees in the Northern District of Illinois. *Foster v. Pace Suburban Bus Div. of the Reg'l Transp. Auth.*, No. 11–cv–9307. That case settled in 2012 pursuant to a confidential settlement agreement. Foster then filed this lawsuit against Joseph Costello, the Executive Director of the RTA, and Principal. On the theory that Costello was ultimately responsible for Foster's removal, Foster alleged, in his Amended Complaint [23], that Costello had retaliated against him in violation of his First Amendment rights (Counts I and II) and in violation of the Illinois Whistleblower Act (Count III). As against Defendant Principal, Foster alleged that by refusing to pay him, Principal had interfered with prospective economic advantage and with his attorney-client relationship with the plans (Count IV).

Both Costello and Principal moved to dismiss. This court granted both motions. The court concluded that Foster had not alleged any direct participation by Costello in actions or inactions resulting in Foster's termination as attorney for the plans. With respect to Principal, the court concluded that any claims against it were "derivative" of the claims Foster had

2

asserted against Pace, and ultimately had settled. *Foster v. Costello*, 2014 WL 1876247 at *11. The Seventh Circuit overturned that decision. The Court of Appeals acknowledged that Foster's complaint was not a "model of clarity," but concluded Foster had effectively

> alleged that Pace repeatedly attempted to terminate him but lacked the legal authority to do so. Pace then wrongfully directed Principal to stop paying Foster, again without the legal authority to do so. And even though Pace lacked the legal authority to issue the stop-payment order, and even though Principal was legally bound to accept orders only from the Plan committees, Principal enacted Pace's unlawful directive and stopped paying Foster . . . .

*Foster*, 806 F.3d 967, 973 (7th Cir. 2015). The court observed, further, that on appeal, Principal conceded that Foster's claims against it were neither "derivative" of his claims against Pace, nor barred by *res judicata* or collateral estoppel. *Id.* Significantly, the court also found no "indication that Principal was somehow released by the terms of Foster's confidential settlement agreement with Pace and Pace employees in the earlier litigation." *Id.* Indeed, the court noted, "Principal [did] not assert that it was specifically named in a release in the Pace litigation." *Id.* at 974. And, the court pointed out, at oral argument, Foster had confirmed that he was "not fully compensated for his losses in his settlement with Pace." *Id.*

## DISCUSSION

At the direction of the Court of Appeals, Foster has filed a second amended complaint, asserting a single count against Principal, for tortious interference with prospective economic advantage and with his attorney-client relationship. Principal asserts that the court lacks jurisdiction and that Foster's settlement with Pace constitutes a complete defense to this action. Both arguments rest on Principal's understanding of the legal effect of Foster's settlement agreement with Pace.

### I. Subject Matter Jurisdiction

Subject matter jurisdiction is, of course, a threshold issue. Diversity of citizenship is undisputed: Foster is a resident of Illinois, and Principal is organized under the laws of Iowa and has its principal place of business there. (Second Amended Complaint [86] ¶¶ 6, 7.) But

3

Principal contends Foster has not established that $75,000 is at stake, and that the court therefore may not exercise jurisdiction over his case.

When ruling on a Rule 12(b)(1) motion, this court is required to "accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee v. City of Chicago,* 330 F.3d 456, 468 (7th Cir. 2003) (citing *Retired Chicago Police Assoc. v. City of Chicago,* 76 F.3d 856, 862 (7th Cir. 1996)). Under 28 U.S.C. § 1332, federal courts have jurisdiction over civil suits between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Only if it is "'legally certain' that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

Before resolving this dispute, the court pauses to note that, in its original incarnation, Foster's complaint invoked federal question jurisdiction: a claim under 42 U.S.C. § 1983 that then-Defendant Costello had violated Foster's First Amendment rights. Foster's claims against Principal could properly have been presented under the court's supplemental jurisdiction. When this court dismissed all of Foster's claims, he appealed. Foster later settled his § 1983 claims against Costello, but the Court of Appeals retained jurisdiction over the claims against Principal, which did not then contest the exercise of diversity jurisdiction. To the contrary, as Foster notes in his brief in opposition to Principal's motion to dismiss, Principal filed a jurisdictional statement with the Seventh Circuit in which it disputed owing anything to Foster, but "acknowledge[d] that the amount in controversy exceeds $75,000 exclusive of interest and costs." (Plaintiff's Memorandum [100], at 3, citing Principal's Docketing Statement.)

When state law claims are all that is left after dismissal of federal claims, the district court "enjoys broad discretion whether to relinquish supplemental jurisdiction over the state law claims." *Dietchweiler by Dietchweiler v. Lucas,* 827 F.3d 622, 631 (7th Cir. 2016) (citing *RWJ*

*Mgmt. Co., Inc. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). Courts ordinarily do relinquish jurisdiction over state law claims, particularly where, as here, the case is still at the pleading stage. The court is not *required* to relinquish jurisdiction in such a case, however, and under some circumstances, for reasons of judicial economy or convenience, the court will decide a state-law claim on the merits even after federal claims have dropped out. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). For example, the court could retain state law claims if it concluded that remanding them would prolong resolution.

It is, thus, possible that the court could reach Foster's tort claims against Principal even without diversity jurisdiction. The court need not reach that question, however, as it concludes that Foster's complaint adequately alleges that at least $75,000 is at stake. Foster has alleged that as a result of Principal's interference with his attorney-client relationship, Foster suffered a loss of the income he expected to earn from that relationship until the time of his retirement. (Second Amended Complaint, ¶ 52.) He asserts that he would have continued representing the plans until retirement at age 75 and calculates the lost pay amount at more than $900,000.00. *Id.* at ¶¶ 39, 52. Principal contests this claim, but Principal's challenges all assume that it will prevail on contested issues. Thus, Principal zeroes in on the agreement that Foster entered into when he settled his claims with Pace.[1] That agreement was not part of the record before this court earlier, and though the Court of Appeals made reference to the agreement, it appears that court did not have access to it, either. Principal notes that it provides for payment to Foster of the monthly fees he would have earned from the date on which it stopped paying Foster until July 2012, when Foster settled his case against Pace. Specifically, as part of the settlement,

---

[1] The parties dispute whether the settlement agreement is admissible for any purpose. Defendant contends it is admissible to assist in a determination of whether the amount in controversy has been satisfied. The cases Principal cites, however, approve consideration of settlement proposals to establish that the plaintiff is seeking amounts above the jurisdictional threshold, not to show that the plaintiff has already recovered for his losses. *See Grinnell Mut. Reinsurance Co. v. Haight*, 697 F. 3d 582, 585 (7th Cir. 2012); *Carroll v. Stryker Corp.*, 658 F.3d 675, 681 n.2 (7th Cir. 2011); *Rising-Moore v. Red Roof Inns, Inc.,* 435 F.3d 813, 816 (7th Cir. 2006). Principal also offers the settlement agreement as a defense to the claims against it. The court addresses that argument below.

Foster recovered $244,300, which includes full payment for all his invoices from March 1, 2011. (Motion to Dismiss [96], at 3, Principal's Memorandum [97], Exs. A-F.) Under the terms of the agreement, Foster recovered those payments in return for his agreement to resign as counsel for the plans and "never represent any entity or labor union in any matter in any way affiliated with Pace . . . ." (Principal's Reply Memorandum [101], at 4, quoting the Agreement ¶ 6.) Principal characterizes Foster's resignation as voluntary and as a bar to any damages theory that presumes Foster would have continued as an attorney for the plans after July 2012. Having been paid in full for his services up to that date, Principal now asserts, Foster has no recoverable damages at all, and his claim that $75,000 is at stake must be rejected.

Foster contests Principal's interpretation of the settlement agreement. Without specifically alleging duress, Foster alleges in his second amended complaint that he settled "in order to survive economically." (Second Amended Complaint ¶ 29.) He contends he did not resign voluntarily and that Principal caused a breach of his retention agreement when it stopped paying him. As Foster sees things, his "resignations were perfunctory acts made after the Pace Plan Committees terminated [him] to comply with Rule 1.16 of the Illinois Rules of Professional Conduct that requires a lawyer to withdraw from representing a client when the attorney is discharged." (Plaintiff's Response [100], at 9.) This means, Foster asserts, that he was in fact constructively discharged, and has a legitimate claim to a continued stream of income, even after the date of his forced resignation. *Id.* at 7. He notes, further, that he has alleged other damages that flow from the severing of his attorney-client relationship, including damage to his reputation. *Id.* at 14-15. Foster may ultimately be unable to prove his allegations, but the court is unable to conclude that it is "legally certain" he has not alleged the jurisdictional floor. Principal's motion to dismiss the complaint for lack of subject matter jurisdiction is denied.

## II.     Failure to State a Claim

In its opening brief, Principal devotes little more than two pages to its argument that Foster's second amended complaint fails to state a claim for relief. (Principal's Memorandum

6

[97], at 12-15.) Principal returns to the argument in its reply memorandum, where it consumes just three sentences. (Reply Memorandum, at 12.) As the court understands that argument, it is chiefly a challenge to Foster's labeling of his claim as one for interference with prospective economic advantage; because Foster had a contractual relationship with the plans, Principal asserts, he can only allege intentional interference with contract. *Id.* at 14. The court will not dismiss a claim because the plaintiff's allegations do not support a particular legal theory, however. *See, e.g., Wudtke v. Davel,* 128 F.3d 1057, 1061 (7th Cir.1997) ("It is not necessary to specify particular legal theories in a complaint, so long as the facts alleged give adequate notice to the defendant of the basis of the suit.") The Seventh Circuit was satisfied that Foster's allegations, while not a "model of clarity" were sufficient to state a claim, and Foster's second amended complaint presents no basis on which this court will revisit the conclusion.

As discussed above, the court has concluded that the settlement agreement and release of Foster's claims against Pace, signed before filing this lawsuit, does not defeat jurisdiction. In its reply memorandum [101] and in a supplemental brief (Principal's Brief in Response [104]), Principal devoted substantial attention to that settlement and release, now arguing that in that agreement, Foster effectively released his claims against Principal.

The Mutual Release in the Pace settlement states: "Foster and Pace, on behalf of each of themselves, and on behalf of each of their past and present . . . agents . . . hereby release absolutely and fully and forever discharge each of the other of them . . . from any and all possible claims[.]" (Principal's Memorandum [97], Ex. A, ¶ 9.) Principal contends that Foster has effectively alleged that Principal was acting as Pace's agent when Principal followed Pace's instructions to stop paying Foster for his legal services. The Illinois Joint Tortfeasor Contribution Act ("Act"),740 ILCS 100/2, provides that a settlement and release of one tortfeasor "does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide." As the Seventh Circuit noted in reversing dismissal of the claims against Principal, the Illinois Supreme Court has read the statute as meaning that a "general release . . .

7

is ineffective unless a party is specifically named." *Foster,* 806 F.3d at 973, citing *Alsup v. Firestone Tire & Rubber Co.*, 101 Ill.2d 196, 200-01, 461 N.E.2d 361, 363-64 (1984). Principal nevertheless cites case law that supports the conclusion that when an agreement releases claims against a class of individuals or entities, such as "agents" or "trustees," parties who fall into those rubrics can claim the protection of the release even if they were not explicitly identified. In support, Principal cites *Polsky v. BDO Seidman*, 293 Ill. App.3d 414, 422, 688 N.E.2d 364, 371 (2d Dist. 1997).

In *Polsky*, the plaintiff had sued his former employer for wrongful termination, and settled that case with an agreement that released both parties' "agents, employees, attorneys and any person acting on its or their behalf" from any claims related to the facts alleged in the settled litigation. 293 Ill. App. 3d at 419, 688 N.E.2d at 368. Plaintiff later sued an accounting firm hired by his former employer to value the employer's business, alleging that the accounting firm had followed his former employer's direction to assign an artificially low value to the business in order to trigger a termination clause in the plaintiff's employment contract. *Id.* at 416-17, 688 N.E.2d at 367. The Illinois Appellate court affirmed dismissal of those claims, however, concluding that even if the auditors were not agents of the employer, they were certainly "acting on [the employer's] behalf," and therefore shielded by release language in the plaintiff's settlement with his employer. *Id.* at 422, 688 N.E.2d at 371; *see also Cummings v. Beaton & Assocs., Inc.*, 249 Ill. App.3d 287, 322, 618 N.E.2d 292, 313 (1st Dist. 1992) (release need not identify other tortfeasors by name in order to be enforceable: "intent of the parties at the time the release was entered is controlling").

Plaintiff objects to any consideration of the settlement agreement he signed with Pace, arguing that it is inadmissible under FED. R. EVID. 408. The court has little difficulty concluding that the Rule does not prohibit consideration of the agreement for the purposes for which Principal seeks to use it: to establish the defense of a settlement and release. In the procedural posture of this case, however, the court declines to hold that Plaintiff's claim against Principal is

8

barred by that previous settlement. Though there has been one appeal, the case is at the pleadings stage. A legal defense, such as this, is ordinarily presented in a motion for summary judgment or in a FED R. CIV. P. 12(c) motion for judgment on the pleadings, not a motion to dismiss. *See* FED. R. CIV. P. 12((h)(2)(B). A variety of facts may be relevant to understanding the nature and scope of Foster's agreement with Pace. For example, is it fair to say that Principal, which was allegedly responsible to the plans, was acting as Pace's agent when it allegedly breached its fiduciary duty to the plans by refusing to pay Foster? What were the intentions of the parties to the Pace settlement at the time they entered into it? As Principal itself emphasizes (Reply Memorandum [101], at 12-14), Foster's own argument for summary judgment in his favor is premature.

The court nevertheless recognizes concerns about Foster's contention that he is entitled to recover more than $900,000 from Principal. Foster effectively acknowledges that he has been paid for the months during which Principal improperly ignored his invoices. He may well have had a reasonable expectation that his role as attorney for the plans would continue for several years after the dispute with Pace arose. What is more difficult to comprehend is how the loss of those years of compensation, or of his professional reputation, is attributable to Principal's conduct. Foster himself asserts that in failing to pay Foster's invoices, Principal was acting at the behest of Pace management members of the plan committees. Those management members were not entitled to act unilaterally, and Foster has plausibly alleged that Principal's decision to carry out their directions was a breach of fiduciary duty. Still, there is no dispute that Pace managers were members of the committees that supervised the Pace plans. The objections of Pace managers to Foster's role as attorney (however improper those objections may have been) might well have precluded Foster's continued employment as attorney for the plans even if union committee members were entirely satisfied with his services. Thus, it appears that Pace management, not Principal, was ultimately behind the decisions that

resulted in Foster's ouster, deprived him of his attorney-client relationship and his stream of income, and damaged his reputation.

Yet all of these arguments were available to Principal earlier. The previous litigation with Pace was no secret to Principal, which was undoubtedly keenly interested in it, if the resolution of that earlier case has some bearing on Principal's liability here. Foster asserts that he provided a copy of the settlement agreement in the Pace litigation as early as April 2013. (Plaintiff's Memorandum in Response [103], at 3.) And, though Foster objected (mystifyingly) to production of a copy of that settlement agreement to Pace, he points out that Principal could have obtained it prior to the appeal because it is a public document, subject to production under the Illinois Freedom of Information Act. *Id.* On appeal, Principal conceded that the Pace litigation does not bar this case—a concession that would not be required if the settlement agreement has the effect Principal now says it has. Principal conceded, as well, that this court erred in concluding that Foster's claims against Principal were derivative of his claims against Pace. *Foster*, 806 F. 3d at 973-74. And Principal agreed that neither *res judicata* nor collateral estoppel are bars to Foster's claims against it. *Id.*

Principal's posture on appeal may not constitute a waiver of these arguments, but that posture is certainly inconsistent with the position it takes now. More importantly, dismissal of this case on the basis of the settlement agreement Foster entered into with Pace would be directly contrary to the conclusion of the Seventh Circuit that Foster has stated a valid claim against Principal.

## CONCLUSION

The motion to dismiss [96-1, 2] is denied. Principal is directed to answer the complaint within 21 days. The parties are encouraged to discuss settlement, and invited to contact the court if they desire a referral to the Magistrate Judge for this purpose.

ENTER:

*[signature: Rebecca R. Pallmeyer]*

Dated: September 29, 2016

REBECCA R. PALLMEYER
United States District Judge